The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on February 27, 2018, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: February 27, 2018**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 16-15564 |
| | ) | |
| CHRISTOPHER GEORGE HRIVNAK, | ) ) | Chapter 7 |
| Debtor. | ) ) | |
| | ) | Adversary Proceeding |
| R & G NURSING CARE, INC. D/B/A KENSINGTON CARE CENTER, | ) ) ) ) | No. 17-1005 |
| Plaintiff, | ) ) | Judge Arthur I. Harris |
| v. | ) ) | |
| CHRISTOPHER GEORGE HRIVNAK, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION[1]

On January 5, 2017, R & G Nursing Care, Inc. d/b/a Kensington Care Center filed this adversary proceeding seeking: (1) a monetary judgment against the

---

[1] This Opinion is not intended for official publication.

debtor, Christopher George Hrivnak, and (2) a determination that this debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).  According to the nursing home, the debtor fraudulently transferred some of his mother's Social Security income to pay his own debts instead of his mother's nursing care.  For the reasons that follow, the Court enters a monetary judgment in favor of the nursing home in the amount of $3,085 and finds this judgment nondischargeable under 11 U.S.C. § 523(a)(2)(A).

## JURISDICTION

The Court has jurisdiction over this matter.  A determination as to the dischargeability of a particular debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I).  This Court has jurisdiction over core proceedings pursuant to 28 U.S.C. §§ 157(a) and 1334 and Local General Order No. 2012-7, entered by the United States District Court for the Northern District of Ohio.

The nursing home's claim against the debtor is unliquidated, *i.e.*, no court has yet fixed an amount of damages.  Nor has any court found that the elements entitling the nursing home to damages have been established by any burden of proof.  Nevertheless, the absence of a prior judgment does not prevent a bankruptcy court from entering a judgment that fixes the amount, if any, of unliquidated claims in the context of determining the dischargeability of the

underlying debt. *See* 28 U.S.C. § 157(b)(2)(B); *Hart v. S. Heritage Bank (In re Hart)*, 564 F. App'x. 773 (6th Cir. 2014) (bankruptcy court has constitutional authority to enter a final monetary judgment in dischargeability action). In any event, on February 14, 2017, both parties expressly consented to the bankruptcy court entering a final judgment in this proceeding. Docket No. 6.

PROCEDURAL HISTORY

On October 7, 2016, the debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. In Schedule E/F, the debtor listed the nursing home as a nonpriority unsecured creditor with a claim of $5,184. Docket No. 1.

On January 5, 2017, the nursing home filed the above-captioned adversary proceeding objecting to the discharge of the debt allegedly owed to the nursing home. The nursing home argues that the alleged debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A). In addition, the nursing home filed an amended proof of claim for $3,471.00.

The parties filed stipulations of fact on January 22, 2018. Docket No. 17. A trial was held on January 30, 2018. The Court heard testimony from Christopher Norton, an administrator for the nursing home, and the debtor. The Court admitted the nursing home's exhibits 1-3 without objection. The Court also admitted the debtor's exhibits A and B without objection.

3

# FINDINGS OF FACT

The findings of fact contained in this memorandum of opinion reflect the Court's weighing of the evidence, including the credibility of each witness. In doing so, "the court considered the witnesses' demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language, or nuance of expression." *In re Parrish*, 326 B.R. 708, 711 (Bankr. N.D. Ohio 2005). Even if not specifically mentioned in this decision, the Court considered the testimony of the trial witness, exhibits admitted into evidence, and stipulations. Unless indicated otherwise, the following facts were established at trial or were stipulated to by the parties.

The parties submitted the following stipulations:

1. On March 10, 2010, Christopher George Hrivnak signed an Admission Agreement admitting his mother, Julia Hrivnak, into the plaintiff's facility. A copy of the Admission Agreement is attached to the plaintiff's Complaint as Exhibit A.

2. Julia Hrivnak has been a resident at the plaintiff's facility from March 10, 2010, through the present.

On December 19, 2005, the debtor's mother, Julia Ann Hrivnak, executed a durable power of attorney naming the debtor as her attorney-in-fact. Exhibit A. The debtor gained control of his mother's monthly Social Security income, which is currently $1,537 according to the debtor.

In the Admission Agreement with the nursing home, the debtor agreed to be his mother's Legal Representative and to be "liable for charges to the extent that he/she misappropriates, steals, or otherwise diverts a Resident's resources that are due to the Facility under this Agreement." Exhibit 1 at 1. In addition, the agreement states:

> The Legal Representative agrees to be a good financial steward of the Resident's income, resources and assets over which he/she has control. Legal Representative understands and agrees that the misappropriation, theft or redirection of those resources so that the Resident's financial obligations under this Agreement are not met is a violation of this Agreement, and may constitute a crime.

Exhibit 1 at 2.

The agreement explains that Medicaid determines the monthly bill amount for Medicaid beneficiaries that must be paid to the nursing home. Exhibit 1 at 4.

The agreement also provides that the nursing home is entitled to interest on any unpaid balance at the rate of 1.5% per month (18% per annum) from the time the sums become due and payable. Exhibit 1 at 5.

In 2014, the monthly bill for the nursing care was $1,057 for the first two months and then increased to $1,074 for the rest of the year. Exhibit B at 1. In 2015, the monthly bill increased to $1,094, which the debtor paid each month except he missed one payment of $1,094 and fell behind. Exhibit B at 1-2. At the end of 2015, the debtor had a balance of $1,007. Exhibit 2 at 2.

When the monthly bill increased to $1,217 in 2016, the debtor paid the correct amount for the first two months, but then the debtor reduced his payments to $1,094 resulting in a shortfall of $738. Exhibit B at 2; Exhibit 2 at 2. In addition, the debtor missed the July 2016 and August 2016 payments. Exhibit B at 2; Exhibit 2 at 2.

Therefore, the total amount owed at the time the debtor filed for bankruptcy was $4,179, plus $34 for beauty shop appointments. In November 2016, the debtor made two payments of $1,094 and paid $34 for the beauty shop appointments, bringing his prepetition balance down to $3,085.

At the trial, the debtor acknowledged that he intentionally paid less than what he owed each month starting in 2016. He testified that he used the leftover money from his mother's Social Security income to pay the mortgage on his home. This left his mother with no money. He testified that his mother would appreciate him being able to keep the house.

## DISCUSSION

The nursing home asks the Court to determine that the money allegedly owed to it by the debtor is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

## I. UNDER OHIO LAW, THE NURSING HOME HAS A FRAUDULENT TRANSFER CLAIM FOR $3,085 AGAINST THE DEBTOR

Before determining whether the nursing home's unliquidated claim is dischargeable under the Bankruptcy Code, the Court must first look to state law to determine the validity and fix the amount of the nursing home's claim against the debtor. *See Grogan v. Garner*, 498 U.S. 279, 283 (1991) (distinguishing between creditor's burden to prove validity of a claim and nondischargeability). Here, the appropriate state law is that of Ohio.

The nursing home's complaint includes a state law claim for fraudulent transfers. Under Ohio Law, a transfer of assets may be fraudulent if the transaction was completed (1) with the actual intent to defraud the creditor, or (2) through constructive fraud, where the debtor had no actual intent to commit fraud. *Lifesphere v. Sahnd*, 903 N.E.2d 379, 381 (Ohio Ct. App. 2008) *citing Blood v. Nofzinger*, 834 N.E.2d 358, 367 (Ohio Ct. App. 2005).

Intent must be established by clear and convincing evidence. *Blood*, 834 N.E.2d at 367-68 ("creditor seeking to set aside a transfer as fraudulent has the ultimate burden of proving, by clear and convincing evidence, the debtor's intent pursuant to R.C. 1336.04(A)(1)").

The statute lists eleven factors relevant in determining actual intent. Ohio Rev. Code § 1336.04(B)(1)-(11). Factors relevant to this proceeding include:

- Whether the transfer or obligation was to an insider, Ohio Rev. Code § 1336.04(B)(1);

- Whether the transfer was of substantially all of the assets of the debtor, Ohio Rev. Code.§ 1336.04(B)(5);

- Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred, Ohio Rev. Code.§ 1336.04(B)(8);

- Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred, Ohio Rev. Code. § 1336.04(B)(9); and

- Whether the transfer occurred shortly before or shortly after a substantial debt was incurred, Ohio Rev. Code. § 1336.04(B)(10).

Alternatively, actual intent is not required to prove that a transfer was constructively fraudulent. A constructively fraudulent transfer occurs when an asset is transferred without receiving a reasonably equivalent value, and the debtor at least reasonably believes that he will incur debts beyond his ability to pay as they become due. *Lifesphere*, 903 N.E.2d at 381 citing Ohio Rev. Code § 1336.04.

In this case, the transfers were to an insider—from the debtor's mother to the debtor. The transfers were all of the debtor's mother's assets. The debtor's mother receives $1,537 in Social Security income per month. The debtor used part of that money to pay for his mother's personal care (hair appointments) and a portion of his mother's nursing care and residence. The debtor then used the rest of his mother's money to pay his own bills, leaving her with insufficient funds to pay for

8

all of her nursing care and residence. The debtor was aware that he would not have enough money to pay the complete monthly bill for his mother's nursing care because of the transfers. In addition, the mother had already incurred substantial debts for the nursing care and residence as of the start of 2016.

In addition, the debtor transferred his mother's money to himself for insufficient consideration. To determine if the value was reasonably equivalent, the Court compares the value of what was transferred against the value of what was received. *Congrove v. McDonald's Corp. (In re Congrove)*, 222 Fed. App'x 450 (6th Cir. 2007) (*citing Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 707-03 (6th Cir. 1999)).

> The Sixth Circuit adds:
>
> [W]e look to the net effect of the transfer or obligation on the debtor's estate and, more specifically, on the remaining funds available to the unsecured creditors. *In re Congrove*, 222 Fed. App'x 450, 454 (6th Cir. 2007); *see also In re Northern Merch., Inc.*, 371 F.3d 1056, 1059 (9th Cir. 2004).

*Suhar v. Bruno (In re Neal)*, 541 Fed. App'x 609, 611-12 (6th Cir. 2013).

The value received must be tangible; non-economic, intangible, or psychological benefits are insufficient to constitute reasonably equivalent value for constructive fraudulent transfer purposes. *Dietz v. St. Edward's Catholic Church (In re Bargfrede),* 117 F.3d 1078, 1080 (8th Cir. 1997). *See also In re Wilkinson*,

9

196 Fed App'x 337, 342 (6th Cir. 2006) (benefit must be concrete and quantifiable); *In re Treadwell*, 699 F.2d 1050, 1051 (11th Cir. 1983) (love and affection not reasonably equivalent value); *SPC Plastics Corp. v. Griffith*, 224 B.R. 27, 31 (6th Cir. BAP 1998) (indirect benefits must be fairly concrete and quantifiable).

The debtor testified that his mother would appreciate him being able to keep his house. This appreciation is not concrete or quantifiable. The debtor did not allege any other consideration. Thus, the debtor's mother did not receive sufficient consideration for the transfers. Nor does the power of attorney, which authorizes the debtor to use his mother's money as he sees fit, make lawful what would otherwise constitute fraudulent transfers under Ohio law. In other words, if the debtor's mother gives a cash gift to her son instead of paying her own creditors, it is still a fraudulent transfer regardless whether the donor is the debtor's mother or the debtor acting on his mother's behalf.

The Court acknowledges that the debtor has paid and continues to pay most of his mother's nursing home obligations from his mother's Social Security income. Nevertheless, the debtor may not intentionally divert even a portion of his mother's money just because he unilaterally disagrees with the amount of the charges or would prefer to pay his own debts instead. Because the nursing home

10

has established actual fraudulent transfers under Ohio Revised Code § 1336.04(A)(1), the Court need not address whether the debtor's transfers also meet the elements for constructive fraudulent transfers under Ohio Revised Code § 1336.04(A)(2).

Therefore, the nursing home has a fraudulent transfer claim of $3,085 against the debtor for the portion of his mother's Social Security income that he used to pay his own debts.

## II. THE DEBTOR'S DEBT TO KENSINGTON CARE FACILITY IS NONDISCHARGEABLE UNDER 11 U.S.C. § 523(a)(2)(A)

In seeking an exception to discharge, a creditor bears the burden of proof by a preponderance of the evidence. *See Rembert v. AT&T Universal Card Servs. (In re Rembert),* 141 F.3d 277, 280-81 (6th Cir. 1998). Discharge exceptions are to be strictly construed in favor of the debtor. *Id.*

Section 523 provides in pertinent part:

(a) A discharge under section 727. . . of this title does not discharge an individual debtor from any debt –
   . . . .
   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
      (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . .

11

The Supreme Court held that the term "actual fraud" in § 523(a)(2)(A) "encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky Int'l. Elect., Inc. v. Ritz*, __U.S.__, 136 S. Ct. 1581, 1586 (2016). The common-law term "actual fraud" is broad enough to incorporate a fraudulent conveyance. *Husky Int'l. Elect., Inc.*, 136 S. Ct. at 1587.

Fraudulent conveyances "typically involve 'a transfer to a close relative, a secret transfer, a transfer of title without transfer of possession, or grossly inadequate consideration.'" *Husky Int'l. Elect., Inc.*, 136 S. Ct. at 1587 *quoting BFP v. Resolution Trust Corp.*, 511 U.S. 531, 540-42 (1994). The fraudulent conduct is concealment and hindrance. *Husky Int'l. Elect., Inc.*, 136 S. Ct. at 1587.

The recipient of a fraudulent conveyance, with the requisite intent, also commits fraud. *Id.*, at 1589. If that recipient later files for bankruptcy, any debts 'traceable to' the fraudulent conveyance . . . will be nondischargeable under § 523(a)(2)(A)." *Id*.

The debtor was the recipient of a fraudulence conveyance with the requisite intent and without adequate consideration. The debtor is liable to the nursing home for the $3,085 that he received through the fraudulent transfers. *Aristocrat Lakewood Nursing Home v. Mayne*, 729 N.E.2d 768 (Ohio Ct. App. 1999);

12

*Lifesphere*, 903 N.E.2d at 379; *Masonic Health Care, Inc. v. Fidelity*, 892 N.E.2d 942 (Ohio Ct. App. 2008).

Therefore, the nursing home's fraudulent transfer claim against the debtor is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## CONCLUSION

For the reasons stated above, the Court enters a monetary judgment in favor of the nursing home in the amount of $3,085 and finds this judgment nondischargeable under 11 U.S.C. § 523(a)(2)(A).

IT IS SO ORDERED.